Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VIII

| | | |
|---|---|---|
| MARCOS ANTONIO NIEVES<br><br>Peticionario<br><br>V.<br><br>CUTLER HAMMER ELECTRICAL CO.<br><br>Recurrida | TA2025CE00247 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Caso Núm.: BY2024CV07435<br><br>Sobre: Despido Injustificado (Ley Núm. 80), Discrimen (Ley Núm. 100) Procedimiento Sumario Bajo la Ley Núm. 2 |

Panel integrado por su presidenta; la Juez Lebrón Nieves, el Juez Pagán Ocasio y la Jueza Álvarez Esnard

*Lebrón Nieves, Juez Ponente*

## **RESOLUCIÓN**

En San Juan Puerto Rico a, 22 de septiembre de 2025.

El 4 de agosto de 2025[1], compareció ante este Tribunal de Apelaciones, el señor Marcos Antonio Nieves (en adelante, parte peticionaria o señor Nieves) por medio de recurso de *Certiorari*. Mediante este, nos solicita que revisemos la *Resolución Interlocutoria* emitida y notificada el 23 de julio de 2025, por el Tribunal de Primera Instancia, Sala Superior de Bayamón. En virtud del aludido dictamen, el foro *a quo* autorizó enmendar la contestación a la querella instada por Eaton Intelligent Power Limited Corp. (en adelante parte recurrida o Eaton).

Por los fundamentos que adelante se exponen, se desestima el recurso de *Certiorari*.

### I

Los eventos procesales del caso que dan lugar al recurso de epígrafe son los que en adelante se reseñan.

---

[1] Traído ante nuestra atención el 18 de agosto de 2025.

El 18 de diciembre de 2024, el señor Nieves interpuso una *Querella* sobre Reclamación de Despido Injustificado, Ilegal y Discriminatorio, Daños y Perjuicios bajo el procedimiento sumario que establece la Ley Núm. 2 del 17 de junio de 1961, según enmendada, en contra de Cutler Hammer. En la *Querella*, la parte peticionaria sostuvo que, trabajó en Cutler Hammer desde el año 1994 hasta el 18 de julio de 2024. Indicó que, el 18 de julio de 2024, fue despedido sin justa causa, a la edad de 57 años y que fue sustituido por alguien de menor edad. Por lo anterior, alegó que su despido fue llevado a cabo en violación a la Ley Núm. 100 del 30 de junio de 1959, 29 LPRA sec. 146 *et seq.*, así como de la Ley Núm. 80 de 30 de mayo de 1976, según enmendada. Asimismo, reclamó una partida por daños y perjuicios.

En respuesta, el 10 de marzo de 2025, la parte recurrida presentó la *Contestación a Querella*. En primer lugar, aclaró que, la parte querellada era Eaton Intelligent Power Limited Corp. y que fue erróneamente denominada en la *Querella* como Cutler Hammer. De igual manera, aseguró haber sido el último patrono del señor Nieves. Alegó que, la parte peticionaria fue despedida con justa causa por haberse quedado dormida en el área de producción. Por otro lado, negó que la parte peticionaria fuese discriminada por su edad o por cualquier otra categoría protegida. Además, argumentó que, no procedía la causa de acción al amparo de la Ley Núm. 80, *infra*, debido a que el señor Nieves había sido despedido por justa causa de conformidad con las disposiciones de la aludida Ley y su jurisprudencia interpretativa. Asimismo, alegó lo siguiente:

> A modo de resumen, el querellante era responsable de preparar y operar maquinaria industrial de producción compleja. En este entorno repleto de maquinaria pesada en constante movimiento hay reglas de seguridad estrictas, pues el más mínimo descuido podría tener consecuencias catastróficas. Sin embargo, el 20 de junio de 2024, el querellante, en un acto de temeraria imprudencia, se acurrucó detrás de una de las máquinas punzonadoras industriales y, acomodado en

una silla, se quedó dormido, arriesgando así su seguridad y la de sus compañeros. Al ser descubierto *in fraganti* por sus supervisores, el querellante despertó y no solo les admitió que estaba durmiendo, sino que reiteró esa admisión a la enfermera ocupacional que lo examinó posteriormente ese día. El querellante reconoció que no tenía condición médica alguna que justificara el haberse quedado dormido durante horas laborables y mientras la maquinaria que estaba a cargo de operar seguía corriendo. Ante estos hechos, la Compañía investigó y concluyó que la conducta negligente e inaceptable del querellante no solo quebrantó las normas del Manual de Empleados, sino que representaba una flagrante violación a las políticas de seguridad. Dormir en un área de producción, donde el riesgo de accidentes graves es latente, constituyó una falta tan severa que hubiera sido una imprudencia de Eaton esperar su repetición antes de terminar el empleo del querellante. Por consiguiente, el despido del querellante fue forzoso y con justa causa por lo que no tiene derecho a remedio alguno bajo la Ley Núm. 80.[2]

En lo aquí pertinente, como parte de sus defensas, en específico, la defensa "K", esbozó lo siguiente:

K. Cualquier daño sufrido por la parte querellante responde exclusivamente a sus propias actuaciones y omisiones, y de ningún modo fue causado por Eaton. En la alternativa, la parte querellante contribuyó a sus daños y cualquier compensación a la que pudiera tener derecho, lo que negamos, debe ser reducida en igual proporción a tal contribución.[3]

Aseguró que, el despido de la parte peticionaria no fue arbitrario ni caprichoso y que únicamente respondió a razones legítimas. A tales efectos, le solicitó al foro recurrido que desestimara con perjuicio la *Querella*.

Transcurridas varias incidencias procesales, innecesarias pormenorizar, el 2 de julio de 2025, la parte recurrida presentó *Moción para Enmendar la Contestación a la Querella*. Solicitó al foro *a quo*, que se le permitiera enmendar la *Contestación a la Querella* a base de la doctrina "*after-acquired evidence*". Lo anterior, con el propósito de enmendar la defensa afirmativa "K", por advenir en conocimiento de nueva información a través de una deposición

---

[2] Véase Apéndice B del recurso de la parte peticionaria, Entrada 3 de SUMAC TA.
[3] *Íd.*

tomada al señor Nieves el 3 de junio de 2025. La enmienda propuesta consistía en lo siguiente reseñado en *italics*:

> K. Cualquier daño sufrido por la parte querellante responde exclusivamente a sus propias actuaciones y omisiones, y de ningún modo fue causado por Eaton. En la alternativa, la parte querellante contribuyó a sus daños y cualquier compensación a la que pudiera tener derecho, lo que negamos, debe ser reducida en igual proporción a tal contribución. *Los potenciales remedios asimismo están limitados por la doctrina de "after-acquired evidence" por lo que el querellante no tiene derecho a salarios futuros ni a reinstalación y cualquier remedio por pago retroactivo de salarios, si alguno, está limitado a la fecha de la deposición del querellante, 3 de junio de 2025. Esto toda vez que Eaton descubrió en su deposición que el querellante se reportó ebrio a su turno de trabajo en no menos de diez (10) ocasiones. El Manual de Empleados de Eaton prohíbe reportarse a trabajar bajo los efectos del alcohol; por tanto, de saberlo antes, Eaton hubiera despedido al querellante con justa causa por presentarse a trabajar ebrio en no menos de diez (10) ocasiones.*[4]

Por otro lado, la parte peticionaria presentó la *Oposición a "Contestación a Querella" en Cumplimiento de Orden*. Sostuvo que, conforme al estado de derecho vigente, la contestación a la querella estaba limitada a la información levantada y conocida por el patrono a la fecha del despido del querellante. Asimismo, adujo que, aunque la Ley Núm. 2 de 1961 no impide que se enmiende una alegación responsiva, en el caso de epígrafe no se pretendía enmendar una defensa afirmativa previamente levantada. Puesto que, la parte recurrida pretendía levantar una nueva defensa afirmativa. La parte peticionaria, acotó que, en la *Contestación a la Querella*, Eaton alegó que, el señor Nieves estaba durmiendo, no que estaba ebrio. Por lo anterior, la parte peticionaria razonó que, dicha pretensión era improcedente, en la medida en que, estaba levantando una nueva defensa que no había sido previamente levantada en la contestación a la querella. De igual manera, añadió que, el Tribunal Supremo de Puerto Rico no había adoptado la doctrina de "*after acquired*

---

[4] Véase Apéndice K del recurso de la parte peticionaria, Entrada Núm. 14 de SUMAC TA.

*evidence*". Finalmente, la parte peticionaria le solicitó al foro *a quo* que declarara No Ha Lugar la solicitud de enmienda.

La parte recurrida presentó la *Réplica a Oposición a Moción para Enmendar la Contestación a Querella*. En su moción, Eaton adujo que, no pudo levantar dicha defensa en la contestación a la querella original, debido a que supo de la conducta del señor Nieves después del despido y a través del descubrimiento de prueba. Igualmente, argumentó que, no era necesario que el Tribunal Supremo de Puerto Rico se expresara sobre la doctrina de "*after-acquired evidence*" para que aplicara en nuestra jurisdicción, dado a que, por virtud de la Ley Núm. 4-2017, tal doctrina adoptada por el Tribunal Supremo Federal, es derecho sustantivo en Puerto Rico en casos de discrimen. Por lo anterior, reiteró su solicitud para que se le permitiera enmendar la contestación a la querella.

El 23 de julio de 2025, el foro de primera instancia emitió la *Resolución* cuya revisión nos ocupa, donde consignó lo siguiente:

> Atendidas las comparecencias de las partes [14, 18, 22], se autoriza enmendar la contestación a la querella a los fines de ampliar la defensa afirmativa "K", en torno a la ausencia o reducción de remedios en daños por actuaciones y omisiones de la parte querellante.

Inconforme, la parte peticionaria acudió ante este foro revisor mediante recurso de *Certiorari* y esgrimió los siguientes señalamientos de error:

**PRIMER ERROR:** Erró el Honorable Tribunal de Primera Instancia al haber emitido una Resolución Interlocutoria mediante la cual permitió la presentación de una nueva defensa afirmativa que no fuera levantada originalmente en su Contestación a Querella por la parte recurrida.

**SEGUNDO ERROR:** Erró el Honorable Tribunal de Primera Instancia al haber emitido una Resolución Interlocutoria mediante la cual permitió la presentación de una nueva defensa que no era conocida por la parte recurrida a la fecha del despido del peticionario.

**TERCER ERROR:** Erró el Honorable Tribunal de Primera Instancia al haber permitido la presentación de una nueva defensa afirmativa aplicando de manera

general y errónea la doctrina de *"After Acquired Evidence"*.

El 14 de agosto de 2025, la parte recurrida presentó ante este foro revisor, *Oposición a Expedición de Recurso de Certiorari*.

Con el beneficio de la comparecencia de las partes, procedemos a disponer del recurso ante nuestra consideración.

**II**

### A. *Jurisdicción*

Nuestro Tribunal Supremo, ha definido la jurisdicción como el poder que ostentan los tribunales para considerar y decidir los casos y las controversias que sean presentados a su atención. *Freire Ruiz et al. v. Morales, Hernández*, 2024 TSPR 129, 215 DPR ___ (2024); *R&B Power. Inc. v. Junta de Subastas ASG*, 213 DPR 685, 698 (2024); *Beltrán Cintrón et al. v. ELA et al.*, 204 DPR 89 (2020).[5] Es normativa reiterada que, los tribunales debemos ser celosos guardianes de nuestra jurisdicción, es por lo que, los asuntos relativos a la jurisdicción son privilegiados y deben ser atendidos con prontitud. *R&B Power. Inc. v. Junta de Subastas ASG*, supra, pág. 698; *Báez Figueroa v. Adm. Corrección*, 209 DPR 288, 298 (2022).[6] La ausencia de jurisdicción puede ser levantada *motu proprio*, ya que, esta incide de forma directa sobre el poder del tribunal para adjudicar una controversia. *Allied Mgtm. Group. v. Oriental Bank*, 204 DPR 374 (2020).[7]

Por consiguiente, un tribunal no tiene discreción para asumir jurisdicción donde no la hay, si carece de jurisdicción, deberá así declararlo y desestimar la reclamación sin entrar en sus méritos, pues la falta de jurisdicción no es susceptible de ser subsanada. *Yumac Home v. Empresas Massó*, 194 DPR 96, 107 (2015); *R&B*

---

[5] Véase *Torres Alvarado v Madera Atiles*, 202 DPR 495 (2019); *SLG Solá-Moreno v. Bengoa Becerra*, 182 DPR 675, 682 (2011).

[6] *Torres Alvarado v. Madera Atiles*, supra, pág. 500; *González v. Mayagüez Resort & Casino*, 176 DPR 848, 856 (2009).

[7] *Torres Alvarado v Madera Atiles*, supra, pág. 500; *Ruiz Camilo v. Trafon Group Inc.*, 200 DPR 254, 268 (2018); *Souffront v. AAA*, 164 DPR 663, 674 (2005).

*Power. Inc. v. Junta de Subastas ASG*, supra, pág. 698; *Souffront v. AAA*, supra, pág. 674; *Cobra Acquisitions v. Mun. Yabucoa et al.*, 210 DPR 384, 394-395 (2022).

Cónsono con lo anterior, la Regla 83(C) del Reglamento del Tribunal de Apelaciones[8], confiere facultad a este Tribunal para a iniciativa propia o a petición de parte desestimar un recurso de apelación o denegar un auto discrecional cuando este foro carece de jurisdicción.

### B. El Certiorari

El certiorari es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar discrecionalmente una decisión de un tribunal inferior. *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194 (2023); *Torres González v. Zaragoza Meléndez*, 211 DPR 821 (2023); *Caribbean Orthopedics v. Medshape et al.*, 207 DPR 994, 1004 (2021); *Pueblo v. Rivera Montalvo*, 205 DPR 352, 372 (2020)[9]. Ahora bien, tal "discreción no opera en lo abstracto. A esos efectos, la Regla 40 del Reglamento del Tribunal de Apelaciones, [...], dispone los criterios que dicho foro deberá considerar, de manera que pueda ejercer sabia y prudentemente su decisión de atender o no las controversias que le son planteadas". (citas omitidas) *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 97 (2008); *Pueblo v. Rivera Montalvo*, supra, pág. 372; *Torres González v. Zaragoza Meléndez*, supra, pág. 848.  La precitada Regla dispone lo siguiente:

> El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de certiorari o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

---

[8] Regla 83(C) del Reglamento del Tribunal de Apelaciones, según enmendada, In re Aprob. Enmdas. Reglamento TA, 2025 TSPR 42, pág. __, 215 DPR __ (2025). https://dts.poderjudicial.pr/ts/2025/2025tspr42.pdf.
[9] Véase también, *Medina Nazario v. McNeil Healthcare LLC*, 194 DPR 723, 728-729 (2016); *IG Builders et al. v. BBVAPR*, 185 DPR 307, 337-338 (2012); *Pueblo v. Díaz de León*, 176 DPR 913, 917 (2009).

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa de los procedimientos en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.[10]

No obstante, "ninguno de los criterios antes expuestos en la Regla 40 del Reglamento del Tribunal de Apelaciones, supra, es determinante, por sí solo, para este ejercicio de jurisdicción, y no constituye una lista exhaustiva". *García v. Padró*, 165 DPR 324, 327 (2005). Por lo que, de los factores esbozados "se deduce que el foro apelativo intermedio evaluará tanto la corrección de la decisión recurrida, así como la etapa del procedimiento en que es presentada; esto, para determinar si es la más apropiada para intervenir y no ocasionar un fraccionamiento indebido o una dilación injustificada del litigio". *Torres Martínez v. Torres Ghigliotty*, supra, pág. 97.

Por otro lado, a partir del 1 de julio de 2010, se realizó un cambio respecto a la jurisdicción del Tribunal Apelativo para revisar los dictámenes interlocutorios del Tribunal de Primera Instancia mediante recurso de *certiorari*. A tal fin, la Regla 52.1 de Procedimiento Civil, dispone, en su parte pertinente, lo siguiente:

> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la

---

[10] Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, pág. 59, 215 DPR __ (2025). https://dts.poderjudicial.pr/ts/2025/2025tspr42.pdf.

denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.

Según se desprende de la precitada Regla, este foro apelativo intermedio podrá revisar órdenes interlocutorias discrecionalmente, cuando se recurre de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía o en casos de relaciones de familia o que revistan interés público, o en aquellas circunstancias en las que revisar el dictamen evitaría un irremediable fracaso de la justicia, entre otras contadas excepciones.

El certiorari, como recurso extraordinario discrecional, debe ser utilizado con cautela y solamente por razones de peso. *Pérez v. Tribunal de Distrito*, 69 DPR 4, 7 (1948). Este procede cuando no está disponible la apelación u otro recurso que proteja eficaz y rápidamente los derechos del peticionario. *Pueblo v. Tribunal Superior*, 81 DPR 763, 767 (1960). Nuestro Tribunal Supremo ha expresado también que "de ordinario, el tribunal apelativo no intervendrá con el ejercicio de la discreción de los tribunales de instancia, salvo que se demuestre que hubo un craso abuso de discreción, o que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial". *Zorniak Air Servs. v. Cessna Aircraft Co.*, 132 DPR 170, 181 (1992*); Rivera y otros v. Bco. Popular*, 152 DPR 140, 155 (2000).

### C. Ley Núm. 2 de 17 de octubre de 1961, según enmendada

La Ley Núm. 2 de 17 de octubre de 1961, según enmendada, también conocida como la Ley de Procedimientos Sumario de Reclamaciones Laborales, 32 LPRA sec. 3118 et. seq. (Ley Núm. 2), provee un procedimiento sumario para la tramitación y adjudicación de pleitos laborales. La esencia del trámite sumario creado por la Ley Núm. 2, *supra*, es proveer un mecanismo judicial para que se consideren y adjudiquen querellas de obreros o empleados de manera rápida, principalmente en casos de reclamaciones salariales y beneficios. *Bacardí Corporation v. Torres Arroyo*, 202 DPR 1014, 1019 (2019); *Medina Nazario v. McNeil Healthcare LLC*, 194 DPR 723, 732 (2016). Con su adopción, el legislador pretendió brindarle a los obreros y empleados un mecanismo procesal judicial capaz de lograr la rápida consideración y adjudicación de las querellas que éstos presenten contra sus patronos. *Vizcarrondo Morales v. MVM, Inc.*, 174 DPR 921, 928 (2008); *Rivera v. Insular Wire Products Corp.*, 140 DPR 912, 923 (1996).

La naturaleza de este tipo de reclamación exige celeridad en su tramitación, pues de esta forma se adelanta la política pública de proteger al obrero y desalentar el despido injustificado. *Izagas Santos v. Family Drug Center*, 182 DPR 463, 480 (2011). Con el fin de adelantar su propósito, la ley estableció:

> [. . .] (1) términos cortos para la contestación de la querella presentada por el obrero o empleado; (2) criterios para la concesión de una sola prórroga para contestar la querella; (3) un mecanismo para el emplazamiento del patrono querellado; (4) el procedimiento para presentar defensas y objeciones; (5) criterios para la aplicación de las Reglas de Procedimiento Civil; (6) una limitación específica sobre el uso de los mecanismos de descubrimiento de prueba; (7) una prohibición específica de demandas o reconvenciones contra el obrero o empleado querellante; (8) la facultad del tribunal para dictar sentencia en rebeldía cuando el patrono querellado no cumpla con los términos provistos para contestar la querella, y (9) los mecanismos para la revisión y ejecución de las sentencias y el embargo preventivo. *Rivera v. Insular Wire Products Corp.*, supra, págs. 923-

924. *Patiño Chirino v. Parador Villa Antonio*, 196 DPR 439, 446 (2016).

Reiteradamente nuestro más Alto Foro ha expresado que "[l]a esencia y médula del trámite fijado para casos sobre reclamaciones de salarios consagrado en la Ley Núm. 2… constituye el procesamiento sumario y su rápida disposición. Desprovisto de esta característica, resulta un procedimiento ordinario más…". (Citas omitidas). *Rodríguez et al. v. Rivera et al.*, 155 DPR 838, 856 (2001). Es por ello que, la Ley de Procedimiento Sumario de Reclamaciones Laborales introdujo a nuestro ordenamiento jurídico un trámite especial y expedito para atender las querellas relacionadas con disputas laborales presentadas por empleados o empleadas, u obreros u obreras en contra de sus patronos. En estos casos se aplicarán las Reglas de Procedimiento Civil en todo aquello que no esté en conflicto con las disposiciones específicas de las mismas o con el carácter sumario del procedimiento establecido por esta ley. *Díaz Santiago v. Pontificia Universidad Católica de Puerto Rico*, 207 DPR 339, (2021). (Escolios omitidos).

Como podrá observarse, el procedimiento sumario creado por la Ley Núm. 2, *supra*, es uno abarcador que al hacer un balance de los intereses envueltos impone la carga procesal más onerosa al patrono, sin que esto signifique que éste queda privado de defender sus derechos. *Rivera v. Insular Wire Products Corp.*, supra, pág. 924. En vista de su carácter reparador, esta ley debe ser interpretada liberalmente a favor del empleado. (Cita omitida). *Ruiz v. Col. San Agustín*, 152 DPR 226, 232 (1998).

Por otra parte, en *Dávila, Rivera v. Antilles Shipping, Inc.*, 147 DPR 483, 501 (1999), el Tribunal Supremo de Puerto Rico tuvo la oportunidad de expresarse en relación con el alcance de la revisión judicial de resoluciones interlocutorias dictadas en un

procedimiento sumario instado al amparo de la Ley Núm. 2, *supra.*

Allí expresó lo siguiente:

> De una lectura de los preceptos anteriores se desprende que el legislador no tuvo la intención expresa de que estuviera disponible un mecanismo de revisión directa de las resoluciones interlocutorias. Más aún, en todos los debates celebrados en la Cámara y el Senado en torno al P. del S. 194 --que dio origen a la ley que analizamos-- **no se hizo mención de la posibilidad de que tales resoluciones interlocutorias fueran revisables**. Todo lo anterior abunda a nuestra conclusión de que la revisión de resoluciones interlocutorias es contraria al carácter sumario del procedimiento y que, debido a ello, debemos autolimitar nuestra facultad al efecto. *Id.*, pág. 496.

Concluyó el Tribunal Supremo de Puerto Rico en *Díaz Santiago v. Pontificia Universidad Católica de Puerto Rico*, supra, a la pág. 349, y citando a *Dávila, Rivera v. Antilles Shipping, Inc.*, supra, pág. 498, lo siguiente:

> En *Dávila, Rivera v. Antilles Shipping, Inc.*, supra, reconocimos que esta norma de autolimitación de revisión contempla una serie de instancias en las que una resolución interlocutoria sí es revisable por este Tribunal Supremo o por el Tribunal de Apelaciones, según corresponda. A estos efectos, a modo de excepción, concluimos que los tribunales apelativos deben mantener y ejercer su facultad para revisar mediante *certiorari* aquellas resoluciones interlocutorias dictadas en un procedimiento sumario tramitado según la Ley Núm. 2 en las siguientes instancias: **(1) cuando el foro primario haya actuado sin jurisdicción; (2) en situaciones en las que la revisión inmediata dispone del caso por completo, y (3) cuando la revisión tenga el efecto de evitar una grave injusticia**. ́Id., pág. 498. Véase, además, (citas omitidas). En estas instancias, el carácter sumario y la celeridad que caracterizan a los procedimientos tramitados bajo la Ley Núm. 2 ceden y los foros apelativos pueden revisar determinada resolución interlocutoria. (énfasis suplido).

Así las cosas, nuestro más Alto Foro, ha reiterado que las resoluciones interlocutorias que emita el Tribunal de Primera Instancia no son revisables por este tribunal. *Dávila, Rivera v. Antilles Shipping, Inc.*, supra, pág. 497. En función del interés protegido por esta legislación social, consistentemente se ha destacado la importancia de asegurar que los trámites judiciales encaminados bajo el palio de la Ley Núm. 2, *supra,* no pierdan su

esencia expedita. *Ruiz Camilo v. Trafon Group*, Inc., 200 DPR 254 (2018). Por lo tanto, corresponde a los tribunales asegurar la estricta observancia del proceso sumario […]". *León Torres v. Rivera Lebrón*, 204 DPR 20,33, (2020).

Esbozada la normativa jurídica que enmarca la controversia de epígrafe, procedemos a aplicarla.

**III**

La parte peticionaria nos solicita que, revisemos la *Resolución Interlocutoria* emitida y notificada el 23 de julio de 2025, por el Tribunal de Primera Instancia. En su dictamen, el foro *a quo*, autorizó a la parte recurrida a enmendar la *Contestación a la Querella*, a los fines de ampliar la defensa afirmativa "K", respecto a la ausencia o reducción de remedios en daños por actuaciones y omisiones de la parte peticionaria.

No obstante, de un examen al recurso de epígrafe, es nuestro criterio que, nos encontramos impedidos de intervenir en los méritos de la resolución recurrida. Lo anterior, por motivo de que, de así hacerlo, se desvirtuaría el propósito sumario que le quiso imprimir el legislador a los procedimientos tramitados al amparo de la Ley Núm. 2, *supra*. Queda claro que, **las revisiones interlocutorias en un procedimiento sumario conforme a la Ley Núm. 2, *supra*, no son revisables por este foro**. El aludido estatuto contiene ciertas excepciones establecidas por la jurisprudencia interpretativa de nuestro Máximo Foro, donde se limitaron las intervenciones del Tribunal Apelativo. En específico, destacamos las excepciones establecidas en *Dávila, Rivera v. Antilles Shipping, Inc.*, supra, donde la Alta Curia limitó nuestra intervención a estancias específicas, a saber: (1) cuando el foro primario haya actuado sin jurisdicción; (2) en situaciones en las que la revisión inmediata dispone del caso por

completo; y (3) cuando la revisión tenga el efecto de evitar una grave injusticia.[11]

En el caso ante nuestra consideración, la resolución que se pretende revisar fue dictada por un tribunal con jurisdicción, y esta no amerita nuestra revisión inmediata para evitar un fracaso a la justicia, toda vez que, no se cumplen ninguna de las excepciones previamente establecidas.

Consecuentemente, carecemos de jurisdicción para entender en el recurso de epígrafe y procedemos a desestimarlo de conformidad con la Regla 83(C) del Reglamento de este Tribunal , el cual nos confiere facultad para, a iniciativa propia, desestimar un recurso de apelación o denegar un auto discrecional cuando este foro carece de jurisdicción.

## IV

Por los fundamentos que anteceden, se desestima el recurso de *Certiorari.*

Notifíquese.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[11] *Dávila, Rivera v. Antilles Shipping, Inc.*, supra, pág. 498